# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 34485

STATE OF IDAHO, ex rel., CHARLES L. WINDER, JOHN MC HUGH, BRUCE SWEENEY, MONTE C. MC CLURE, GARY BLICK, NEIL MILLER and JOHN X COMBO, IDAHO TRANSPORTATION BOARD,

Plaintiffs-Appellants,

v.

CANYON VISTA FAMILY LIMITED PARTNERSHIP,

Defendant-Respondent.

and

LAZY J RANCH, INC.,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, June 2009 Term

2010 Opinion No. 26

Filed: March 17, 2010

Stephen Kenyon, Clerk

---

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Hon. Nathan W. Higer, District Judge.

The decision of the district court is affirmed.

Hon. Lawrence G. Wasden, Attorney General, Boise, for appellants. Chris Kronberg argued.

Davison, Copple & Copple, Boise, for respondent. Heather Cunningham argued.

---

HORTON, Justice

This is a condemnation case. The State of Idaho (the State) appeals the district court's decision to permit the jury to decide issues concerning rights of access from the condemned property and the court's decision to admit the Idaho Transportation Department's (ITD's) order of condemnation into evidence. The State also challenges certain jury instructions and the court's decision to award the condemnee, Canyon Vista Family Limited Partnership (Canyon),

- 1 -

attorney fees. Canyon has moved to dismiss the State's appeal as moot and seeks attorney fees on appeal. We deny Canyon's motion to dismiss. However, we affirm the judgment and award Canyon attorney fees on appeal.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The State, acting through ITD, initiated a condemnation action against Canyon on December 28, 2004, in order to take a strip of Canyon's property for the purpose of widening Poleline Road in the city of Twin Falls (the City). The initial complaint was amended by stipulation, and the resulting first amended complaint sought condemnation of all access rights to Poleline Road other than those shown on the project plans. An order of condemnation entered by ITD on November 8, 2004, also provided that all access rights to Poleline Road other than those shown on the project plans would be extinguished.

The jury awarded Canyon $399,633 as compensation for the real property taken by the State and $2,021,897 in severance damages. The trial court entered a judgment on the verdict and ordered the State to pay the amount of the judgment within 30 days pursuant to I.C. § 7-714. Following a hearing on attorney fees and costs, the district court entered a supplemental judgment on the verdict awarding Canyon $903,096.77 in attorney fees and costs. The State appeals the district court's decision to allow the jury to determine issues of access and its decision to allow the order of condemnation into evidence. The State's appeal also challenges several of the court's jury instructions and its decision to award Canyon attorney fees. Canyon requests attorney fees on appeal.

Simultaneous to bringing this appeal, the State tendered payment of the judgment below to Canyon, purportedly pursuant to I.C. § 7-717, in order to retain possession of the land during these appellate proceedings. Canyon subsequently moved this Court to dismiss the State's appeal with prejudice, claiming that payment of the judgment rendered the appeal moot. This Court issued an order setting the motion to dismiss for oral argument at the same time as oral argument on the merits.

## II. STANDARD OF REVIEW

"This Court exercises free review over questions of law." *Downey Chiropractic Clinic v. Nampa Restaurant Corp.*, 127 Idaho 283, 285, 900 P.2d 191, 193 (1995). We review a trial court's decision to admit evidence for abuse of discretion. *State v. Field*, 144 Idaho 559, 564, 165 P.3d 273, 278 (2007) (citing *State v. Robinett*, 141 Idaho 110, 112, 106 P.3d 436, 438

(2005)). In this review, we examine whether: (1) the trial court correctly perceived the issue as discretionary; (2) the trial court acted within the outer bounds of its discretion and with applicable legal standards; and (3) the trial court reached its decision through an exercise of reason. *Sun Valley Shopping Ctr., Inc. v. Idaho Power Co.*, 119 Idaho 87, 94, 803 P.2d 993, 1000 (1991) (citing *State v. Hedger*, 115 Idaho 598, 600, 768 P.2d 1331, 1333 (1989)). We exercise free review over the propriety of the trial court's jury instructions. *Puckett v. Verska*, 144 Idaho 161, 167, 158 P.3d 937, 943 (2007) (citations omitted).

### III. ANALYSIS

We first consider Canyon's motion to dismiss this appeal. We next address the State's argument that the trial court, rather than the jury, should have determined the issue of access rights. We then turn to the trial court's decision to admit the order of condemnation and the State's objections to the trial court's jury instructions. Finally, we address the district court's award of attorney fees and Canyon's request for attorney fees on appeal.

### A. Canyon's motion to dismiss this appeal is denied.

Canyon has moved to dismiss the State's appeal because the State paid all amounts due pursuant to the judgment prior to filing its notice of appeal. Because the judgment has been fully satisfied, Canyon argues, the State's appeal is moot. The State counters that, while the process was truncated, ITD clearly conditioned negotiation of its check in satisfaction of the judgment on Canyon's consent to the procedure outlined in I.C. § 7-717, which allows the State to maintain possession of the condemned property while simultaneously pursuing an appeal. We agree.

At the conclusion of the trial in this matter, the district court ordered that ITD pay Canyon the amount of the judgment pursuant to I.C. § 7-714, which states that "[t]he plaintiff must, within thirty (30) days after final judgment, pay the sum of money assessed . . . ." There is no question that ITD had to pay Canyon. There is also no question that if ITD wished to appeal while maintaining possession of the condemned property (initially gained through stipulation of the parties), it had to pay Canyon. This is because the Idaho Constitution states in relevant part that "[p]rivate property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." IDAHO CONST. art. I, § 14. More specifically, "[t]he taking of possession of the land sought to be condemned under an order for possession prior to final determination of the cause, is such a taking as requires the prior

- 3 -

payment of just compensation." *Yellowstone Pipe Line Co. v. Drummond*, 77 Idaho 36, 43, 287 P.2d 288, 292-93 (1955) (citations omitted).

Idaho Code § 7-717 defines "just compensation" and the manner in which it should be paid in order to allow a plaintiff in the State's position to continue in possession of condemned property pending an appeal:

> At any time after trial and judgment entered, or pending an appeal from the judgment to the Supreme Court, whenever the plaintiffs shall have paid into the court for the defendant the full amount of the judgment, and such further sum as shall be required by the court as a fund to pay any further damages and costs that may be recovered in said proceedings, as well as all damages that may be sustained by the defendant, if for any cause the property shall not be finally taken for public use, the district court in which the proceeding was tried may, upon notice of not less than ten (10) days, authorize the plaintiff, if already in possession, to continue therein, and if not, to take possession of and use the property during the conclusion of the litigation, and may, if necessary, stay all actions and proceedings against the plaintiff on account thereof.

> The defendant who is entitled to the money paid into court for him upon any judgment, shall be entitled to demand and receive the same at any time thereafter, upon obtaining an order therefor from the court. It shall be the duty of the court, or the judge thereof, upon application being made by such defendant, to order and direct that the money so paid into court for him, be delivered to him upon his filing a satisfaction of the judgment, or upon his filing a receipt therefor, and an abandonment of all defenses to the action or proceeding, except as to the amount of damages that he may be entitled to in the event that a new trial shall be granted. A payment to a defendant as aforesaid shall be held to [be] an abandonment by such defendant of all defenses interposed by him, excepting his claim for greater compensation.

After trial, ITD sent a check directly to Canyon's attorney with a letter specifying that the State wished "to make clear that this check is tendered pursuant to I.C. § 7-717, without the added procedure of disbursing the funds through the court." The letter also informed Canyon of the State's intention to appeal the verdict and judgment. Finally, the letter explained that the State "will consider [Canyon's] tendering of the check as consent to this abbreviated procedure."

While we do not encourage disregard for the statute's direction that a condemnor should pay the judgment into the court, rather than directly to the condemnee, we agree that Canyon brought the transaction within the ambit of the statute when it accepted ITD's check. Therefore, the question we must consider is whether, by satisfying the judgment and paying Canyon pursuant to I.C. § 7-717, the State mooted its appeal.

"Mootness . . . applies when a favorable judicial decision would not result in any relief. This Court may only review cases in which a judicial determination will have a practical effect on the outcome." *Fenn v. Noah*, 142 Idaho 775, 779, 133 P.3d 1240, 1244 (2006). In this case, whether a favorable judicial decision would result in any relief depends on our interpretation of I.C. § 7-717. "The interpretation of a statute is a question of law over which this Court exercises free review." *Carrier v. Lake Pend Oreille School Dist.*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006). If we were to find that the jury rendered a verdict in excess of just compensation and thus ordered Canyon to refund to the State any funds in excess of that amount, this appeal would not be moot, because our judicial determination would have a practical effect on the outcome— the State would recover some of its money.

Idaho Code § 7-717 does not expressly provide for this possibility nor does the statute preclude it. The statute simply does not address appeals at all. Idaho Code § 7-721, which requires a plaintiff seeking to take possession of condemned land prior to trial to pay a judicially determined amount of just compensation, provides that if the judgment and award at trial is less than that judicially determined amount paid by the plaintiff, the defendant must remit to the plaintiff any excess funds. It is not illogical to read I.C. § 7-717 as implying similar relief in a case where the plaintiff prevails on appeal. This interpretation is in keeping with the general trend among courts to permit an appeal despite satisfaction of the judgment in eminent domain cases. 6A NICHOLS ON EMINENT DOMAIN § 26E.03[3][6] (2007); *see also State v. Jay Six Cattle Co., Inc.*, 335 P.2d 799 (Ariz. 1959) (holding that although an Arizona statute very similar to I.C. § 7-717 did not explicitly provide for recovery by the state from the condemnee of any amount deemed excessive upon appeal, recovery would be appropriate as the condemnee was only entitled to just compensation, not excessive compensation, and the appeal was therefore not moot). For these reasons, we deny Canyon's motion to dismiss the State's appeal.

**B. The State's argument that the trial court, rather than the jury, should have decided the scope of access rights taken was not preserved for appeal.**

The State urges that the trial court erred by not determining the scope of access rights, if any, that were condemned and instructing the jury accordingly. It is probably true that the trial court committed legal error. *See Rueth v. State*, 100 Idaho 203, 222-23, 596 P.2d 75, 94-95 (1978) (holding that in eminent domain proceedings, all issues other than just compensation, including an accurate description of the property taken, are for resolution by the trial court and not the jury); *and also Ada County Highway Dist. v. Sharp*, 135 Idaho 888, 892, 26 P.3d 1225,

1229 (Ct. App. 2001) (holding that trial courts are expected to define the scope of a take where access rights are at issue). The State, however, failed to raise this issue below, and it is thus not preserved for review on appeal. *Viveros v. State Dept. of Health and Welfare*, 126 Idaho 714, 716, 889 P.2d 1104, 1106 (1995) (holding that issues presented for the first time on appeal will not be considered).

The State contends that the issue was presented to the district court by way of its motion to bifurcate proceedings. Prior to trial, the State filed a motion to bifurcate the proceedings "so that the scope of the taking issues can be tried and resolved by the Court prior to the presentation of the issue of just compensation to the jury." In its brief in support of that motion, however, the State did not indicate that it was seeking to have the trial court resolve the question of the scope of access rights that were being taken. Rather, the motion arose from a disagreement between the State and Canyon as to the scope of the full parcel before the taking. The State took the position that the full parcel was comprised of four adjacent pieces of property because the same four people owned the parcels by way of different legal entities. Canyon took the position that the full parcel was only that piece of property owned by Canyon in fee simple. Thus, the State asked that the district court, rather than the jury, determine the extent of the full parcel of land prior to the taking. The motion was denied.

Neither the motion to bifurcate nor the State's briefing addressed the access issue. In fact, the word "access" does not appear anywhere in either the motion or the supporting brief. For the first time on appeal, the State argues that the "larger parcel" issue "would have impacted the access issue." While it is undoubtedly true that resolution of the larger parcel issue would have had implications as to the access issue, the State was obligated to alert the district court to those implications. We are unwilling to hold that a party may preserve an issue for appeal through silence. *McKinsey v. Vernon*, 130 Idaho 354, 357-58, 941 P.2d 326, 329-30 (1997) (holding that a claim not made in complaint and not argued before the district court was not preserved for appeal.)

The State quotes the trial judge at the hearing on its motion to bifurcate as stating that it was not going to "inject itself" into this issue, implying that the issue to which the court was referring was the issue of access. This is misleading. The trial court's statement was part of the following exchange with counsel for the State:

MR. MALLET: If you want to let the jury decide the larger parcel issue, Your Honor, I think there's case law that would suggest that that might be appropriate. There's the case that we distinguished that seemed to think that that's a call the jury could make.

If you're telling us, sell that one to the jury folks, we'll certainly do that, Your Honor.

THE COURT: Well, I'm going to do this. For the – for the time being, I'm going to deny the motion to bifurcate. I will take a further look at it and decide, but I – it seems to me that the – the defendant's position on this is correct. There's no reason for the Court to inject itself into – in the manner that you're suggesting . . . .

Not only was the State not arguing that the court should decide access issues, but it conceded that the jury could decide the issue that it was urging the court to decide—the question of the larger parcel. Therefore, even if we were to hold that the State's raising of the access issue by implication was enough to preserve it for appeal, the State waived its argument.

Further indication that the State failed to raise the issue of whether the court should decide access rights can be found in the State's proposed jury instructions. The State asked the trial court to instruct the jury to determine the issue of access rights. One of the State's proposed preliminary jury instructions stated:

In deciding whether a right to access was taken from the property owner, you must first find that the property had a right of direct access to Pole Line Road in the before condition. If you find it did not, no right to access has been taken and the owners are not entitled to any compensation for a taking of access.

If you find that the property owner had a right of direct access to Pole Line Road in the before condition, you then have to determine whether or not the remaining vehicular access to the property is reasonable. If all right to access the property were destroyed, or if the property was not left with reasonable access after the taking, then there was a taking of access which would entitle the property owner to compensation. Only then may you determine just compensation for the taking of that access.

While it is true that this instruction was proposed after the trial court denied the State's motion to bifurcate, it was not submitted in conjunction with any objection to the jury deciding the issue of access, i.e., this instruction was not submitted as an attempt to mitigate a ruling from the trial court in which it declined to determine the scope of access taken. Furthermore, the State, though it made several objections to various jury instructions (discussed below), never objected to any of the trial court's instructions on the basis that those instructions failed to define the scope of access rights taken. Instead, it appears as though the State was perfectly content with the jury determining the issue of access rights until the jury returned an unexpectedly large verdict.

Evidently anticipating that we might recognize that it failed to preserve the issue for appeal, the State points to two instances in Canyon's trial court briefing to suggest that Canyon raised the issue of access below.  It is true that Canyon's trial brief contains a section entitled "Court Decides all Issues Except Value," in which Canyon cited to *Rueth v. State*, 100 Idaho at 222-23, 596 P.2d at 94-95, for the proposition that the trial court must decide all issues other than just compensation.  The State fails to point out, however, that despite this reference, Canyon ultimately took the position in its trial briefing that "Access is Related to Value and Is a Fact Question and a Jury Issue."  So, while Canyon may have quoted a correct statement of the law, it advocated for a misapplication of that law, and the State made no argument to the contrary.  Accordingly, we conclude that the State has failed to preserve the issue for appeal.  *McKinsey v. Vernon*, 130 Idaho at 357-58, 941 P.2d at 329-30.  Thus, we decline to address the issue of whether the trial court, rather than the jury, should have determined the scope of access rights.[1]

**C. The trial court did not err in admitting the order of condemnation.**

The State contends that the district court erred in admitting the order of condemnation arguing, based on the decision in *Ada County Highway Dist. v. Sharp*, 135 Idaho 888, 26 P.3d 1225 (Ct. App. 2001), that it is irrelevant, and further that the admission of the order was misleading and unfairly prejudicial.

Evidentiary rulings involving relevancy are not discretionary matters, and as such, are reviewed *de novo* on appeal.  *Gunter v. Murphy's Lounge*, LLC, 141 Idaho 16, 25, 105 P.3d 676, 685 (2005).  In the event that a trial court errs in the admission or exclusion of evidence, we will grant a new trial only if the error affected a substantial right.  I.R.C.P. 61; I.R.E. 103; *Burgess v. Salmon River Canal Co., Ltd.*, 127 Idaho 565, 574, 903 P.2d 730, 739 (1995); *Hake v. DeLane*, 117 Idaho 1058, 1065, 793 P.2d 1230, 1237 (1990).

In *Sharp*, there was a dispute whether the State had condemned access rights.  The order of condemnation stated that all of the condemnee's access rights were to be extinguished and that all future access would be prohibited.  *Sharp*, 135 Idaho at 889-90, 26 P.3d at 1226-27.  The

---

[1]     After the parties submitted their appellate briefing to this Court, they submitted supplemental authority, suggesting that our decision in *Lochsa Falls, L.L.C. v. State*, 147 Idaho 232, 207 P.3d 963 (2009) would have some application to this appeal.  The question in *Lochsa Falls* involved ITD's ability to impose conditions upon a grant of access to an existing controlled-access highway.  We were not asked in *Lochsa Falls*, as we are in this case, to consider a landowner's right to access a public road before and after it becomes a controlled-access highway under ITD's jurisdiction.

complaint, however, made no mention of condemning access rights. *Id.* at 890, 26 P.3d at 1227.

The Idaho Court of Appeals held that:

> Idaho Code § 7-707, appearing in chapter 7 entitled "Eminent Domain," pertains to the condemnation complaint and sets forth what it "must contain," including "a description of each piece of land sought to be taken, and whether the same includes the whole, or only a part, of an entire parcel or tract." Idaho Code § 40-1310(3), appearing in a chapter entitled "Highway Districts," provides that the director of a highway district: "shall have the right, subject to the order of the highway district commissioners, to begin action in the name of the highway district in the district court of the county in which the district is situated, to condemn the land necessary for the right-of-way for the highway, under the provisions of chapter 7, title 7, Idaho Code," whenever the director cannot agree with any person for the purchase of land. This section further provides: "An order of the highway district commissioners entered upon its minutes that the land sought to be condemned is necessary for a public highway and public use shall be prima facie evidence of the fact." Neither of these code sections purport to state whether it is the order of condemnation or the complaint initiating the eminent domain action that is determinative in defining what land or what rights are sought to be condemned. It is this Court's opinion, however, that I.C. § 7-707 is more specific and, perforce, controlling.

*Id.* at 891, 26 P.3d at 1228. In other words, the court did not determine that an order of condemnation is per se irrelevant, but rather held that when there is a conflict between the order and the complaint, the complaint controls.

In the present case, we agree with the State that the order of condemnation was irrelevant, as the complaint defined the nature and scope of the take. However, the admission of the order of condemnation did not affect a substantial right of the State. This is because there is no conflict between the order of condemnation and the complaint. The order states, in relevant part:

> That all rights of access to, from, and between the right of way of the public way and all of the contiguous remaining real property of the record owner(s) shall be extinguished and prohibited except for access, if any, as provided and shown on the said project plans . . . .

The complaint states "[t]hat access is to be limited to that shown on [the project plans]." There is no functional difference in the language of the two documents. For this reason, we conclude that the admission of the order of condemnation does not entitle the State to relief on appeal.

**D. The State's objections to the trial court's jury instructions were not preserved for appeal or are without merit.**

1. Instruction No. 12

Jury Instruction No. 12 states in relevant part that "[a]ll direct access rights to Poleline Road were acquired by the State of Idaho." The State makes several objections to this instruction. First, the State urges that this instruction "begs the question as to what direct access right existed before the take, a question that the trial court had the responsibility to answer." Further, the State argues that the trial court erred in giving this instruction before hearing all of the evidence and in basing the instruction upon the order of condemnation. The latter objection is the only one that the State voiced prior to the instruction being given to the jury; therefore, it is the only argument that is viable on appeal. I.R.C.P. 51(b); *Bates v. Seldin*, 146 Idaho 772, 775-76, 203 P.3d 702, 705-06 (2009) (holding that if an appellant fails to make a specific objection to a jury instruction before the jury retires to consider its verdict, the issue will not be preserved for appeal pursuant to I.R.C.P. 51(b)); *Jones v. Crawforth*, 147 Idaho 11, 19-20, 205 P.3d 660, 668-69 (2009).

The State's contention that the instruction was based upon the order of condemnation is belied by the record. The district court made the following comments about this instruction:

> COURT: Okay. We talked about this informally on Friday as far as Instruction 12 is concerned and we're putting a ruling on the record. It's the courts [sic] opinion that the *complaint* shows that the State was taking access to that property, highway access, direct access, to Pole Line Road from the condemned property. That's why I think [Instruction No. 12] is . . . appropriate.

(Emphasis added.) Based on the foregoing, we conclude that the State's only objection to Jury Instruction No. 12 that was properly preserved for appeal is without merit.

2. Instruction No. 21

Jury Instruction No. 21 states in relevant part that "all the right of access to, from and between the public right of way and all of the contiguous remaining property of Canyon Vista has been extinguished and prohibited except for access, if any, as shown on the project plans." The State argues that the instruction misstates the facts, because Canyon had direct residential access both before and after the take, and that the instruction improperly relies on the order of condemnation. Once again, the latter objection was the only one made at trial, and is therefore the only objection we need consider. I.R.C.P. 51(b); *Bates*, 146 Idaho at 775-76, 203 P.3d at 705-06. For the reasons explained above, the trial court's admission of the order of condemnation did not affect a substantial right of the State in that the order of condemnation was consistent with the State's prayer for relief in its complaint. Accordingly, the State's only viable objection to Jury Instruction No. 21 is without merit.

3. Instruction No. 28

Jury Instruction No. 28 states:

In determining what uses and/or access would be allowed to Pole Line Road in the before condition, you are instructed that a landowner whose property abuts an existing roadway, [sic] has a property right which includes access to that roadway. The controlling governmental authority (City of Twin Falls) cannot deny all direct access to that roadway without payment of just compensation.

You are further instructed, in determining what access is allowed or available, neither the City of Twin Falls nor the State of Idaho can require a land owner to join with adjacent property owners for the purpose of providing access to the subject property in an attempt to cure the access taken by the condemnation of Canyon Vista [sic] access rights to Pole Line Road. Nor could the City of Twin Falls, when considering a Planned Unit Development application in the before condition, require Canyon Vista to file a joint application with one or more adjoining parcels that have different ownership.

The State argues that this instruction misstates the law, because landowners do not have a property right consisting of access to any particular street. The State also argues that the instruction misstates the facts because it does not make clear that Canyon did not have direct commercial access to Poleline Road before the take. The State also complains that Jury Instruction No. 28 informed the jury that the City could not force Canyon to develop its property with its neighbors, but failed to let the jury know that the City would not necessarily give permission to develop without doing so. The State continues that the instruction suffers from the trial court's failure to determine what access existed prior to the take and because it ignores the issues of what commercial access the City may have given to Canyon and whether a regulatory taking by the City may have occurred. Finally, because the City was not a party to the litigation, the State alleges it was error for the instruction to imply that if the City had changed its access policy prior to the take that the State would be required to pay for any loss of access.

The State, once again, has raised objections to this Court that it failed to squarely present at trial. The State's objection, in its entirety, to Instruction No. 28 is as follows:

MR. VOGT: With regard to the right of access, the instruction is a binding instruction. It instructs the jury on certain aspects of the law which we believe are not applicable to the law in this case.

We don't believe this is a case that the State is forcing the property owners to accept property in lieu of damages. We are simply stating that our theory of highest and best use includes a – includes evidence, beyond speculation, that certain requirements would be required of property owners.

We believe the instruction is not in compliance with the statutory and constitutional provisions applicable to takings and regulatory takings. We believe

- 11 -

our highest and best use theory is beyond speculative. And we believe, quite frankly, it's our theory of the case and we're entitled to an instruction on that theory.

We also believe the applicable law in this case is KMST v. Ada County, Leroy vs. Talbot, Meredith versus – Leroy v. Tahoe, and Meredith v. Talbot, in – out of the Ninth Circuit.

It is difficult to discern what exactly the State's objections were,[2] but of the arguments made to this Court, it appears that the only one even referenced at trial pertains to whether Canyon would have to meet "certain requirements" before the City would allow it to develop its land. Therefore, this Court need not address the State's other objections to this instruction. I.R.C.P. 51(b); *Bates*, 146 Idaho at 775-76, 203 P.3d at 705-06.

It is unclear whether the State's single preserved objection to Jury Instruction No. 28 concerns Canyon's development of its land in the before condition, the after condition, or both. Although the State's arguments on appeal are readily understandable, they differ from the objection presented to the trial court. In light of the State's failure to preserve a coherent objection to Jury Instruction No. 28, we are unable to find error.

4. Instruction No. 33

Jury Instruction No. 33 instructs the jury to disregard any project influence in determining the value of the property prior to the take. The State argues that while this instruction correctly states the theory of project influence, it does not conform to the evidence showing that the City had changed its approach toward granting commercial access in light of the project: Canyon argued that project influence occurred as early as 1993, and that if that is true, a regulatory taking by *the City* may have occurred, and thus *the State* cannot be liable for severance damages as of the date of the take.

Once again, the State raises this argument on appeal without having squarely presented it to the trial court. The State's only objection to this instruction was that:

[G]iven the project influence, we believe it is against public policy to allow an instruction that – that allows the jury to consider all of our planning processes, all of our public discussion, and we believe that there was evidence presented that

---

[2]    The first two references appear to be to *KMST, LLC, v. County of Ada*, 138 Idaho 577, 67 P.3d 56 (2003) and *Leroy Land Development v. Tahoe Regional Planning Agency*, 939 F.2d 696 (9th Cir. 1991). There is no reported decision from an appellate court of this State or from the Ninth Circuit Court of Appeals in which the names "Meredith" and "Talbot" appear in the caption nor does the parties' briefing cite such a case. In both *KMST* and *Leroy Land*, the respective courts found voluntary actions by developers did not constitute a taking. These holdings are not apposite to the issues identified by the State on appeal.

found that the State committed to the project January, 2000, and we believe that should be included in – in the instruction.

This objection makes no reference to the city, to any regulatory taking, or to 1993. The objection could be interpreted to mean that the State wished the jury to be precluded from considering evidence of project influence prior to January 2000, but there is no explanation for why such a limitation would have been significant. In short, the objection made at trial was vague and did not expressly present to the trial court the position the State now takes on appeal. Accordingly, we decline to consider that position. I.R.C.P. 51(b); *Bates*, 146 Idaho at 775-76, 203 P.3d at 705-06.

5. Jury Instruction No. 38

Jury Instruction No. 38 instructs the jury on the law of exactions. The State argues on appeal that this was confusing to the jury because the State does not have the power of exaction and it was not an issue in deciding what the State took in this case. The State's objection at trial, however, was that:

> [W]hile we believe it is a correct instruction on the law of exactions, as it's outlined in the Nolan [sic] and Dolan cases, we believe that more than speculative evidence has been presented in this case that shows there is a third issue, under the law of exaction, dealing with development agreements, and we believe that instruction is not contained in No. 38 . . . .

Contrary to the position the State now takes, the objection at trial makes no mention of the State's lack of power to impose exactions and does not indicate that exaction is not an issue, but rather urges that the issue is broader than the instruction indicates. Again, the State's objection was not preserved for appeal. I.R.C.P. 51(b); *Bates*, 146 Idaho at 775-76, 203 P.3d at 705-06.

6. Jury Instructions as a Whole

The State argues that because the jury instructions asked the jury to determine the access that would have been permitted in the before condition while simultaneously telling it that the sole issue for its determination was the amount of just compensation, the instructions as a whole were confusing. The State further argues that the City should not have been mentioned in the instructions because the City was not on trial. The State made no such objections at trial, and we decline to consider them now. *Id.*

**E. The district court did not err in awarding Canyon attorney fees.**

The State argues that the trial court abused its discretion in awarding Canyon attorney fees because it relied on Canyon's contingency fee agreement with its attorneys and failed to set forth in writing the factors listed in I.R.C.P. 54(e)(3).[3]

An award of reasonable attorney fees to the condemnee in an eminent domain proceeding is a matter for the trial court's guided discretion and will be overturned only upon a showing of abuse. *Ada County Highway Dist. By and Through Fairbanks v. Acarrequi*, 105 Idaho 873, 877, 673 P.2d 1067, 1071 (1983).

> As to the amount of attorneys' fees awardable, we deem the criteria outlined in I.R.C.P. 54(e)(3) to be appropriate in condemnation, as in all other civil cases. We caution that the court should not automatically adopt any contingent fee or contractual arrangement, but rather the fee awarded may be more or less than that provided in the lawyer-client contract.

*Id.* at 878, 673 P.2d at 1072. This Court has held that I.R.C.P. 54(e)(3) does not require the district court to make specific findings in the record, but does require the court to consider the stated factors in determining the amount of the fees. *Smith v. Mitton*, 140 Idaho 893, 902, 104 P.3d 367, 376 (2004).

In this case, the district court did not automatically adopt the contingency fee agreement or neglect to consider the factors enumerated in I.R.C.P. 54(e)(3). The trial court found "the work performed by the defendants' attorneys to be both reasonable and necessary. In this case, the Court finds a contingency agreement to be a reasonable manner to calculate attorney's fees because this is an exceptional case and exceptional hours were required to defend it." This statement does not reflect a blind adoption of the contingency fee agreement. To the contrary, it can only be interpreted as demonstrating the district court's consideration of the factors outlined

---

[3] The factors listed in I.R.C.P. 54(e)(3) are:
(A) The time and labor required.
(B) The novelty and difficulty of the questions.
(C) The skill requisite to perform the legal service properly and the experience and ability of the attorney in the particular field of law.
(D) The prevailing charges for like work.
(E) Whether the fee is fixed or contingent.
(F) The time limitations imposed by the client or the circumstances of the case.
(G) The amount involved and the results obtained.
(H) The undesirability of the case.
(I) The nature and length of the professional relationship with the client.
(J) Awards in similar cases.
(K) The reasonable cost of automated legal research (Computer Assisted Legal Research), if the court finds it was reasonably necessary in preparing a party's case.
(L) Any other factor which the court deems appropriate in the particular case.

in I.R.C.P. 54(e)(3), as the district court's statement clearly articulates its evaluation of the request for attorney fees in light of I.R.C.P. 54(e)(3)(A) and (B). The State does not identify any factors that militate against the award. Accordingly, we hold that the State has failed to demonstrate that the district court abused its discretion in awarding attorney fees to Canyon.

**F. Canyon is entitled to attorney fees on appeal.**

Canyon requests attorney fees on appeal "pursuant to I.A.R. 40 and I.A.R. 41, as well as the reasoning set forth by this Court in previous condemnation cases." Canyon cites to several of those cases as well as to I.C. § 7-718 in support of its request. The State argues that attorney fees are not warranted because attorney fees in condemnation cases are not mandatory and should not be given in this case considering the legal issues and the failure of the trial court to determine the scope of the take in this case.

Attorney fees are allowable in eminent domain proceedings, but are not mandatory as being within the definition of just compensation. *Acarrequi*, 105 Idaho at 876, 673 P.2d at 1070. "According to the great weight of authority, attorneys' fees and other expenses are not recoverable in a condemnation proceeding except as authorized by statute." *Id.* at 875, 673 P.2d at 1069 (citations omitted). Idaho Code § 7-718 states in relevant part that "[c]osts may be allowed [in an eminent domain proceeding]."

An award of attorney fees on appeal is appropriate in this case. The only arguments that the State has properly raised on appeal relate to whether the district court erred in admitting the order of condemnation and whether the district court erred in awarding Canyon attorney fees. As discussed, neither of these arguments has merit. For this reason, we award Canyon attorney fees on appeal.

## IV. CONCLUSION

We deny Canyon's motion to dismiss the appeal. None of the State's objections and arguments, except those regarding the trial court's admittance of the order of condemnation and its award of attorney fees, are properly raised on appeal. The State has not shown that it is entitled to relief based upon the district court's admission of the order of condemnation or that the district court erred in awarding Canyon attorney fees. We award Canyon attorney fees and costs on appeal.

Chief Justice EISMANN, Justices BURDICK, J. JONES, and Justice Pro Tem KIDWELL **CONCUR**.